


**KOLLER LAW LLC**
David M. Koller, Esq. (037082002)                           *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **NEVA PRYOR,** | : | Civil Action No. |
| 4022 E Whittier Street | : | |
| Tucson, AZ 85711 | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Complaint and Jury Demand** |
| | : | |
| **COUNCIL ON COMPULSIVE GAMBLING** | : | |
| **OF NEW JERSEY, INC.** | : | |
| 3635 Quakerbridge Road, Suite 7 | : | |
| Hamilton Township, NJ 08619 | : | |
| Defendant. | : | |

### CIVIL ACTION

Plaintiff, Neva Pryor (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Council on Compulsive Gambling of New Jersey, Inc. (hereinafter "Defendant"), for violations of Section 1981 and the New Jersey Law Against Discrimination ("NJLAD"). In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Council on Compulsive Gambling of New Jersey, Inc. is an organization that provides assistance with people affected by a gambling problem with a location and corporate headquarters located at 3635 Quakerbridge Road, Suite 7, Hamilton

Township, NJ 08619.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original

jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the District of New Jersey pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because some of the Plaintiff is domiciled in this judicial district, the Defendants is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under the NJLAD.

13. Plaintiff timely filed a Complaint of Discrimination ("Complaint") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation against Defendant.

14. The Complaint was assigned a Charge Number 530-2021-04318 and was dual filed with the New Jersey Division on Civil Rights.

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated January 13, 2022. Plaintiff received the notice by electronic mail.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff was employed by Defendant as Executive Director from on or about May 5, 2015 through on or about June 18, 2021, the date of her unlawful termination.

21. By way of background, Plaintiff is an accomplished and successful leader with an impressive background in the field of mental health and addiction, and especially disordered gambling.

22. Prior to her employment with Defendant, Plaintiff earned a master's degree in Clinical and Counseling Psychology and served the community by raising awareness and developing various programs relating to mental health and addiction.

23. For the last eight (8) years of her career, Plaintiff has focused her efforts on gambling prevention, intervention, and treatment services.

24. As Defendant's Executive Director, Plaintiff excelled as a leader, managing both internal operations and external relationships to further the goals of the organization.

25. In said role, Plaintiff reported to Defendant's Board of Directors ("the Board") in connection with the performance of her job duties.

26. In or about 2016, Fred Hogan ("Hogan") (Caucasian), became the President of the Board.

27. Shortly thereafter, Plaintiff, an African American, noticed that Hogan frequently spoke to her in a rude and condescending manner; however, Hogan did not speak as harshly when communicating with Caucasian co-workers.

28. Furthermore, Hogan forbid Plaintiff from communicating with any other members of the Board; yet Plaintiff's job duties required that she work in partnership with the Board, so Hogan's directive poised Plaintiff for failure.

29. Then, on or about December 11, 2018, during Defendant's Christmas party, Plaintiff asked Hogan to please excuse her as she passed by him to greet someone, and Hogan responded by saying to Plaintiff, "Don't let me get Black with you."

30. Shocked by Hogan's racist comment, Plaintiff immediately reported it to Alice Ostapiuk, Human Resources Manager.

31. Notwithstanding their awareness of Hogan's blatantly racist remark, Defendant failed to conduct an investigation.

32. Thereafter, Hogan continued to subject Plaintiff to disparate treatment by speaking to her in an intimidating manner.

33. By way of example, Hogan demeaned Plaintiff by falsely claiming that certain Board Members did not want her in the role of Executive Director.

34. By way of further example, Hogan regularly talked over Plaintiff and would attempt to silence her when she spoke.

35. In or about late 2020, Hogan's discriminatory conduct towards Plaintiff intensified as he began to micromanage Plaintiff and became overly and inappropriately involved in daily operations.

36. As a result, on or about February 15, 2021, Plaintiff registered a complaint of race discrimination with Dan Heneghan ("Heneghan") (Caucasian), Vice President of the Board, and submitted a written race discrimination complaint to Heneghan on or about February 17, 2021, again recounting Hogan's racist statement and his "abusive, demeaning, and downgrading" behavior toward her.

37. Shortly thereafter, in or about March and April 2021, although the Board had never criticized her work performance previously, members of the Board began to subject

Plaintiff to baseless criticism in retaliation for her registering a race discrimination complaint.

38. On or about May 11, 2021, in response to Plaintiff's complaint, a third-party investigator determined that Hogan had in fact made a racist comment to Plaintiff and engaged in conduct violative of the NJLAD.

39. Notwithstanding same, based only on their discriminatory and retaliatory animus, the Board disagreed with the said finding and sought to terminate the Plaintiff's employment.

40. In connection therewith, Defendant immediately placed Plaintiff on an involuntary leave of absence and launched an "investigation" into Plaintiff's conduct on or about May 21, 2021, allegedly due to "complaints" that were raised during the investigation into her own complaint of race discrimination.

41. Significantly, there were no complaints about Plaintiff's conduct in the third-party investigation report.

42. Further, Defendant's sham investigation into Plaintiff's conduct did not include any opportunity for her to confront any purported allegations against her.

43. By contrast, Hogan was permitted to participate fully in the investigation regarding the complaint against him.

44. Interestingly, although the third-party investigator recommended a mediation to attempt to resolve the Plaintiff's race complaint, Defendant decided not to proceed with the mediation.

45. During a Board Meeting on or about June 13, 2021, the Board discussed that Plaintiff had retained an attorney and that Plaintiff had complained of retaliation and discussed potential litigation.

46. On or about June 15, 2021, Defendant abruptly terminated Plaintiff's employment due to the results of the Board's fraudulent investigation.

47. Unsurprisingly, Defendant then restored Hogan to his position as President without taking any punitive action against him.

48. Based on the foregoing, Plaintiff believes and avers that she was discriminated against due to her race and retaliated against based on her opposition to race discrimination in violation of §1981 and the NJLAD.

## COUNT I – RACE DISCRIMINATION
## SECTION 1981

49. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

50. Plaintiff is a member of protected classes in that she is African American.

51. Plaintiff was qualified to perform the job for which she was hired.

52. Plaintiff suffered adverse job actions, including, but not limited to termination.

53. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

54. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

55. Defendants discriminated against Plaintiff on the basis of race.

56. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

57. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – RACE DISCRIMINATION
## NEW JERSEY LAW AGAINST DISCRIMINATION

58. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

59. The foregoing conduct by Defendants constitutes unlawful discrimination against Plaintiff on the basis of her race (African American).

60. As a result of Defendant's unlawful race discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – RETALIATION
## SECTION 1981

61. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

62. Plaintiff engaged in protected activity protected by Section 1981 when she internally complained about race discrimination.

63. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

64. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – RETALIATION
## NEW JERSEY LAW AGAINST DISCRIMINATION

65. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

66. Plaintiff engaged in activity protected by the NJLAD when she internally complained

about race discrimination.

67. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

68. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Neva Pryor, requests that the Court grant her the following relief against Defendants:

(a) Compensatory damages;

(b) Punitive damages;

(c) Liquidated damages;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendants, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Section 1981 and the NJLAD.

(j) Order Defendants to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k) Order Defendants to remove and expunge, or to cause to be removed and expunged,

       all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

                                          **RESPECTFULLY SUBMITTED,**

                                          **KOLLER LAW, LLC**

Date: April 1, 2022        **By:**    */s/ David M. Koller*
                                                David M. Koller, Esquire (037082002)
                                                2043 Locust Street, Suite 1B
                                                Philadelphia, PA 19103
                                                215-545-8917
                                                davidk@kollerlawfirm.com

                                                *Counsel for Plaintiff*