**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **NEVA PRYOR**, | |
| Plaintiff, | Civil Action No. 22-1860 (ZNQ) (RLS) |
| v. | |
| **COUNCIL ON COMPULSIVE GAMBLING OF NEW JERSEY, INC.**, | **OPINION** |
| Defendant. | |

**QURAISHI, District Judge**

This matter comes before the Court upon the Motion for Summary Judgment (the "Motion," ECF No. 24) filed by Defendant Council on Compulsive Gambling of New Jersey, Inc. ("Defendant" or the "Council"). In support of the Motion, Defendant filed a brief ("Moving Br.," ECF No. 25-1)[1] and a Statement of Undisputed Material Facts ("SUMF," ECF No. 24-1). Plaintiff Neva Pryor ("Plaintiff") filed an opposition brief ("Opp'n Br.," ECF No. 27-1) and a Response to Defendant's SUMF ("RSMF," ECF No. 27-2). Defendant filed a reply brief ("Reply Br.," ECF No. 32). After careful consideration of the parties' submissions, the Court decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[2] For the reasons outlined below, the Court will DENY Defendant's Motion for Summary Judgment.

---

[1] Defendant originally submitted its brief at ECF No. 24-2, but then resubmitted it to correct an error. (*See* ECF No. 25.) The Court references herein the resubmitted brief at ECF No. 25-2.
[2] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

I.       BACKGROUND

A.       Procedural Background

On April 1, 2022, Plaintiff filed this lawsuit stemming from her employment, and subsequent termination, by Defendant.  (*See* "Complaint," ECF No. 1.)  The Complaint asserts claims of race discrimination pursuant to 42 U.S.C. § 1981 and the New Jersey Law Against Discrimination ("NJLAD") (Counts I and II, respectively) and retaliation pursuant to § 1981 and NJLAD (Counts III and IV, respectively).  Defendant filed an Answer to the Complaint on July 18, 2022.  (ECF No. 4.)  On December 31, 2023, Defendant filed the instant Motion for Summary Judgment.  (ECF No. 24.)

B.       Factual Background

The Court recites only the facts that it finds are relevant to the instant Motion.[3]  Defendant is a non-profit organization that provides treatment, education, and referral services to people affected by a gambling problem.  (SUMF ¶ 2; RSMF ¶ 2.)  Starting in May 2015, Plaintiff worked for Defendant as Executive Director.  (SUMF ¶ 3; RSMF ¶ 3.)  As part of her role, Plaintiff reported to the Council's Board of Directors (the "Board").  (SUMF ¶ 4; RSMF ¶ 4.)  In or around 2016, Fred Hogan ("Hogan") became President of the Board.  (SUMF ¶ 4; RSMF ¶ 4.)  According to Plaintiff, although Hogan had taken part in Plaintiff's interview process, he did not want her to be hired for the position of Executive Director, and instead preferred a different African American woman for the role.  (SUMF ¶ 12; RSMF ¶¶ 12, 15.)  Nonetheless, Plaintiff received positive performance reviews and multiple pay raises as Executive Director, for which Hogan was partly

---

[3] As explained *infra*, it is difficult for the Court to glean any facts at all from the parties' SUMF and RSMF.  The Court will therefore recite all relevant facts here, and only distinguish between the undisputed and disputed facts *infra*, in its discussion section.  Moreover, the Court does not consider conclusions of law or other statements in the SUMF about what has been alleged in this case, as legal conclusions and allegations, supported only by citations to the complaint in this case, are non-factual statements which are improperly included in Defendant's SUMF.  *See* L. Civ. R. 56.1 (requiring statements of material facts only); *Teubert v. SRA Int'l, Inc.*, 192 F. Supp. 3d 569, 575 (D.N.J. 2016) (the Court must disregard legal argument or conclusions of law brought in a Rule 56.1 statement).

2

responsible.  (SUMF ¶ 15; RSMF ¶ 15.)  Plaintiff asserts that, Hogan rated Plaintiff in the highest category for two performance evaluations that she received.  (RSMF ¶ 15.)

Notwithstanding Plaintiff's job performance, Hogan frequently spoke to Plaintiff in a rude and harsh manner.  (SUMF ¶ 5; RSMF ¶ 5.)[4]  Plaintiff reported an inappropriate comment that Hogan made to her at the Council's 2018 holiday party to human resources.  (SUMF ¶¶ 9, 21; RSMF ¶¶ 9, 21.)  Plaintiff says that Hogan's intimidating behavior towards her did not improve following the incident.  (RSMF ¶ 10.)  An investigation did not immediately occur because Plaintiff decided not to pursue the matter further at that time.  (SUMF ¶ 9; RSMF ¶ 9.)  However, Plaintiff subsequently submitted a written complaint of race discrimination in February 2021.  (SUMF ¶ 18; RSMF ¶ 18.)

A few days prior, on February 10, 2021, the Board had met to discuss how Plaintiff handled a gambling help-line call.  (SUMF ¶ 19; RSMF ¶ 19.)  Plaintiff says she did not immediately report it because she wanted to gather further information before informing the Board about it, so the Board first learned of the incident through other means.  (SUMF ¶ 16; RSMF ¶ 16.)  Defendant claims that the Board disagreed with how Plaintiff handled the situation in addition to being troubled about the delayed report.  (SUMF ¶ 16.)  Plaintiff claims that she does not recall anyone vocalizing displeasure with how she handled the situation, although at least one board member was concerned that he did not find out about the incident until the next Board meeting.  (SUMF ¶ 17; RSMF ¶¶ 16–17.)

It was not until after Plaintiff submitted her formal race discrimination complaint that she heard any criticism about her job performance.  (RSMF ¶ 19.)  In response to Plaintiff's complaint, the Council retained a third-party investigator, Marvin Askins ("Askins"), who was an equal

---

[4] The Court construes this as a fact because the SUMF cites to evidence in the record to support this statement, even though it also improperly cites to the complaint.  (*See* SUMF ¶ 5 (citing Pl.'s Dep. at 30–35).)

employment opportunity consultant and trainer.  (SUMF ¶ 20; RSMF ¶ 20.)  Askins found that

Hogan's conduct at the 2018 holiday party fell under NJLAD's purview, and that Hogan's other

behavior related to workplace bullying.  (RSMF ¶ 21.)  Askins further found that Hogan interfered

with Plaintiff's right to a hostile-free work environment, and that her allegations regarding a racial

comment made to her by Hogan were substantiated.  (*Id.*)  Askins could not corroborate any of

Plaintiff's other allegations.  (SUMF ¶ 22.)

At two separate Board meetings in May 2021, the Board discussed a written report of

Askins's findings.  (SUMF ¶ 23; RSMF ¶ 23.)  The Board thereafter placed Plaintiff on an

involuntary leave of absence and began a subcommittee investigation into her conduct, because

the report alerted the Board about possible improper behavior by Plaintiff.  (SUMF ¶¶ 24, 30;

RSMF ¶¶ 24, 30.)  Specifically, the Askins investigation revealed multiple issues raised by

coworkers about Plaintiff's conduct, including using abusive and expletive language towards

coworkers and also making comments about "red necks" and "Trump supporters," among other

comments.  (SUMF ¶¶ 26–29, 33; RSMF ¶¶ 26–29, 33.)  Plaintiff insists, however, that one of the

noted situations was a moment of disagreement rather than a complaint or issue.  (RSMF ¶ 27.)

Plaintiff claims that, prior to the subcommittee investigation, Hogan had always reported her job

performance as "exceptional," and the Board had not been aware of any complaints about her

performance.  (RSMF ¶ 24.)

Plaintiff met with two of the three subcommittee members over Zoom for at least an hour

to discuss her coworkers' allegations about her conduct.  (SUMF ¶ 32; RSMF ¶ 32.)  The

subcommittee issued a written report in June 2021 that found, as corroborated by one or more of

the Council's staff members, that Plaintiff had engaged in a myriad of improper conduct, including

allowing a coworker to help her move, using vulgar language, failing to inform the Board about

the hotline incident in a timely manner, and exhibiting inadequate leadership during "wellness

meetings." (SUMF ¶¶ 34–35; RSMF ¶ 34–35.)  Thereafter, the Council failed to renew Plaintiff's employment agreement.  (SUMF ¶ 36; RSMF ¶ 36.)

## II.      JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## III.     LEGAL STANDARD

Rule 56 provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000).  In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party.  *See Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial.  *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine disputes of material fact exist).   "[U]nsupported allegations in . . . pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990).  If the nonmoving party has failed "to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial . . . there can be 'no genuine [dispute] of material fact,'

since a complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5

(3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence

and decide the truth of the matter but to determine whether there is a genuine dispute for trial.

*Anderson*, 477 U.S. at 248–49.  Credibility determinations are the province of the fact finder.  *Big*

*Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).  The summary

judgment standard, however, does not operate in a vacuum.  "[I]n ruling on a motion for summary

judgment, the judge must view the evidence presented through the prism of the substantive

evidentiary burden." *Anderson*, 477 U.S. at 254.

## IV.   DISCUSSION

### A.   Undisputed and Disputed Material Facts[5]

Defendant seeks summary judgment on all counts of the Complaint.  The Court will first

distinguish the undisputed facts from the disputed facts.

---

[5] The Court notes that Plaintiff references several facts in her Opposition Brief that are not asserted anywhere in the SUMF or RSMF, including that: Askins warned Defendant about possibly retaliating against Plaintiff; Plaintiff was the only Black executive director employed by the Council, there were no Black assistant executive directors employed by the Council either; the Board treated Plaintiff and Hogan vastly different in that Hogan was allowed to and did continue in his role as President of the Board following an investigation into his conduct, whereas Plaintiff was terminated; there was no discussion at the February 2021 Board meeting about Plaintiff's handling of the help-line incident, and at that time the Board had no concerns about Plaintiff's ability to continue serving as Executive Director; the Board expressed concerns about legal exposure and possibly needing to retain a mediator; the Board discussed the possibility of not renewing Plaintiff's employment contract at the May 2021 Board meetings; Defendant replaced Plaintiff upon nonrenewal of her contract with Felicia Grondin, a white woman.  (See Opp'n Br. at 1, 10, 13, 16–17, 21–22, 23 n.2, 25–26, 30.)  The Court cannot consider these facts—either as disputed or undisputed—as they do not appear in any factual statement as required by Local Civil Rule 56.1.

The Court finds that the following material facts are undisputed:[6] Plaintiff worked for the Council as Executive Director, which role required her to report to the Council's Board, (SUMF ¶¶ 3–4; RSMF ¶¶ 3–4); although Hogan took part in Plaintiff's interview process and was partly responsible for pay raises and positive performance reviews that she received, he preferred another candidate for the job, (SUMF ¶¶ 12, 15; RSMF ¶¶ 12, 15); upon becoming President of the Board, Hogan frequently spoke to Plaintiff in a rude and harsh manner, including making a comment to Plaintiff at the Council's holiday party in 2018 which Plaintiff reported to Human Resources, (SUMF ¶¶ 4–5, 9, 21; RSMF ¶¶ 4–5, 9, 21); Plaintiff filed a written race discrimination complaint in February 2021, after which the Council retained third-party investigator Askins to make findings and submit a written report, (SUMF ¶¶ 18, 20, 23; RSMF ¶¶ 18, 20, 23); the Askins report recommendations included a finding that Hogan "interfered with" Plaintiff's" right to a hostile free work environment," (RSMF ¶ 21; ECF No. 24-4 at 43); the Board discussed the Askins report at two of its May 2021 meetings, thereafter placing Plaintiff on an involuntary leave of absence and beginning a subcommittee investigation into her conduct, including her handling of a gambling help-line call as well as issues raised by Plaintiff's coworkers about her conduct, such as using abusive and expletive language in the workplace, (SUMF ¶¶ 19, 23–24, 26–30, 33; RSMF ¶¶ 19, 23–24, 26–30, 33); the subcommittee issued a written report finding that Plaintiff had engaged in a variety of improper conduct, (SUMF ¶¶ 34–35; RSMF ¶¶ 34–35); and two of its three members met with Plaintiff over Zoom before the Council ultimately failed to renew Plaintiff's employment agreement, (SUMF ¶¶ 32, 36; RSMF ¶¶ 32, 36).

---

[6] The Court construes as undisputed all facts in the SUMF to which Plaintiff objects without citation to any evidence of record. L. Civ. R. 56.1 ("The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion."); *see also VIP Couture, Inc. v. C.H. Robinson Int'l, Inc.*, Civ. No. 16-3596, 2018 WL 259947, at *2 nn.2, 3 (D.N.J. Jan. 2, 2018) (treating as undisputed factual statements to which the opposing party responded with a "bare assertion" that did "not support its response with any citation to the record").

The disputed facts as provided by the parties are less straightforward.[7]  A host of material facts are in dispute: whether Hogan ultimately did not want Plaintiff hired for the position of Executive Director, (RSMF ¶ 15); whether Hogan rated Plaintiff in the highest category for two performance evaluations, (*id.*); whether Hogan used microaggressions pertaining to African Americans, constantly referred to having Black friends, and code switched in the workplace several times per year from 2016 to 2021, (*id.* ¶ 6); whether Hogan's behavior toward Plaintiff improved following the holiday party incident, (*id.* ¶ 10); details about the gambling help-line call, including how exactly Plaintiff handled the call, the reason for her delay in reporting the incident to the Board, and whether the Board was displeased only with the timing of her reporting or also with how she handled the situation, (*id.* ¶¶ 16–17); whether Plaintiff had heard any criticism about her job performance prior to submission of her formal race discrimination complaint in 2021, (*id.* ¶ 19); whether one of the alleged issues with Plaintiff's own conduct was not an issue at all but rather a moment of disagreement between herself and a coworker, (*id.* ¶ 27); whether, prior to the subcommittee investigation, Hogan had always reported her job performance as "exceptional," (*id.* ¶ 24); and whether, prior to the subcommittee investigation, the Board had been aware of any complaints about her job performance, (*id.*).

## B.    Race Discrimination Claims

Plaintiff alleges claims of race discrimination pursuant to § 1981 (Count I) and NJLAD (Count II).  Those two causes of action have identical elements, and so the Court will analyze their merits concurrently.  *Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 498–99 (3d Cir. 1999) (NJLAD and § 1981 have elements identical to a Title VII discrimination claim).  Under the

---

[7] The Court notes that several of Plaintiff's disputed facts were asserted in Plaintiff's RSMF when they should have instead been presented as a supplemental statement of disputed material facts pursuant to Local Civil Rule 56.1.  (*See* RSMF ¶¶ 15, 21, 24.)  Further complicating the factual landscape of this case, Defendant fails to address any of these asserted facts in a responsive statement of its own.  (*See generally* Reply Br.)  As such, the Court will treat these facts raised by Plaintiff in her RSMF as disputed for purposes of its analysis of the present Motion.

applicable *McDonnell Douglas* burden-shifting framework, Plaintiff has the initial burden of establishing a *prima facie* case by a preponderance of the evidence to raise an inference of discrimination by showing: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered from an adverse employment action; and (4) the circumstances of the adverse action give rise to an inference of unlawful discrimination. *Flores v. Danberg*, 706 F. App'x 748, 752 (3d Cir. 2017). If Plaintiff shows a *prima facie* case, Defendant must articulate a legitimate, non-discriminatory reason for the adverse action. *Id.* The burden then shifts back to Plaintiff to show that the proffered reason was merely a pretext for intentional discrimination. *Id.*

Here, Defendant argues that summary judgment should be granted in its favor because there is no evidence of various critical components of Plaintiff's claims, including a hostile work environment, but-for causation, and a showing of pretext. (Moving Br. at 6–10.) Defendant insists that the undisputed facts show that Plaintiff was terminated not because of discrimination but because of her own conduct. (*Id.* at 8.) Plaintiff, on the other hand, argues that a reasonable jury can find that she meets all four elements, only two of which she says are in dispute to begin with— her qualification for the position and an inference of discrimination. (Opp'n Br. at 10.) Plaintiff argues that she, at the very least, raises a genuine dispute of material fact that precludes a finding of summary judgment, especially regarding pretext.[8] (*Id.* at 10–17.)

The Court finds that it cannot grant summary judgment for Defendant on Plaintiff's race discrimination claims, as Plaintiff raises genuine disputes of material fact regarding the motivation behind the Council's nonrenewal of Plaintiff's employment—and thus ultimately whether her

---

[8] The Court agrees with Plaintiff that the undisputed evidence of her positive job performance reviews and raises over time could lead a reasonable jury to find that she was qualified for her position. (Opp'n Br. at 9; SUMF ¶¶ 15, 36; RSMF ¶¶ 15, 36.) Furthermore, the undisputed evidence suggests that a jury could also find that Plaintiff meets the two remaining elements—she is a member of a protected class as a Black woman and she suffered from an adverse employment action upon the nonrenewal of her employment agreement. (SUMF ¶ 36; RSMF ¶ 36.) The narrow issue here is therefore whether Plaintiff raises a genuine dispute of material fact with respect to the element of pretext.

termination was because of her race (or in other words, whether the explanation given was pretextual). Although Defendant asserts a few undisputed facts to suggest that Plaintiff's own performance was the legitimate nondiscriminatory reason for her termination, the Court finds that numerous other disputed material facts as detailed above are critical to the question of pretext, namely the extent of Hogan's race-based behavior from 2016 to 2021, including whether his race-based behavior towards Plaintiff in particular improved following the holiday party incident in 2018 (which Plaintiff asserts it did not); the extent to which the Board expressed dissatisfaction with the way Plaintiff handled the help-line incident despite its timing, especially because it is undisputed that Plaintiff otherwise had positive performance reviews; whether Hogan referred to Plaintiff's job performance as "exceptional" up until the subcommittee investigation; and when Defendant became dissatisfied with Plaintiff's overall job performance. (RSMF ¶¶ 6, 10, 16–17.) As Defendant concedes in its briefing, (*see* Moving Br. at 10), Plaintiff has a track record of positive work performance that starkly contrasts the negative descriptions of her work performance that started occurring no earlier than the help-line incident and Plaintiff's discrimination claim, just a few months before she was terminated. (SUMF ¶ 15; RSMF ¶ 15.) These disputed facts could thus lead a reasonable jury to find that the reason provided by Defendant for Plaintiff's termination was merely pretext, especially given Hogan's repeated race-based behavior in the workplace over time, both in general and as directed at Plaintiff in particular.

Moreover, the disputed material facts identified herein directly refute some of Defendant's arguments. For example, Defendant acknowledges that factors to be considered in determining whether there is a hostile work environment in race discrimination cases include the severity and frequency of the discriminatory conduct—the disputed frequency and severity of Hogan's race-based conduct implicates these factors. (Moving Br. at 9 (citing *Heitzman v. Monmouth County*, 728 A.2d 297, 304 (N.J. Super. Ct. App. Div. 1999) (partially overruled on other grounds), which

itself cites *Taylor v. Metzger*, 706 A.2d 685 (N.J. 1998)); RSMF ¶¶ 6, 10.)   Additionally,

Defendant's argument that Hogan's behavior is insufficient to constitute the requisite severe and

pervasive discriminatory environment because he only made one race-based comment (at the 2018

holiday party) fails because Plaintiff's assertion is directly contradictory.  According to her, Hogan

made numerous race-based comments from 2016 to 2021.  (RSMF ¶ 6.)  Most importantly and in

sum, the disputed material facts refute Defendant's argument that Plaintiff's own conduct was the

cause of her termination.  (*Id.* ¶¶ 6, 10, 16–17, 21–22.)

For all of the reasons stated herein, the Court finds that Plaintiff at least raises a genuine

dispute of material fact regarding Counts I and II and will deny Defendant's Motion with respect

to those counts.[9]

### C.      Retaliation Claims

Plaintiff also brings retaliation claims pursuant to § 1981 (Count III) and NJLAD (Count

IV).  Similar to Plaintiff's race discrimination claims, these two causes of action have identical

elements and require the Court to engage in the *McDonnell Douglas* burden-shifting analysis. *See*

*Flores*, 706 F. App'x at 753 (applying the same standard for retaliation claims brought under

NJLAD and § 1981).  Plaintiff again has the initial burden of establishing a *prima facie* case, now

by showing: (1) she engaged in protected activity; (2) she suffered an adverse employment action;

and (3) there was a causal connection between the adverse action and protected activity. *Id.* If

Plaintiff shows a *prima facie* case, Defendant must articulate a legitimate, non-discriminatory

reason for the adverse action. *Id.*  The burden then shifts back to Plaintiff to show that the proffered

reason was merely pretext for a retaliatory motive. *Id.*

---

[9] The Court notes that even if it were to not consider the additional disputed facts improperly asserted by Plaintiff in
paragraphs 15, 21, and 24 of the RSMF, (*see supra* at 8 n.7), its conclusion would be the same.  The disputed facts
that were properly asserted by Plaintiff are enough to raise genuine issues of material fact that preclude summary
judgment with respect to Plaintiff's race discrimination claims.

Defendant argues that summary judgment on Counts III and IV is warranted because there is no evidence of a retaliatory motive by the Council in failing to renew Plaintiff's employment agreement, or of a causal connection between the nonrenewal and Plaintiff's discrimination complaint. (Moving Br. at 10–12.) Plaintiff argues that she does demonstrate a *prima facie* case, including causation, and that in any event she at least raises genuine disputes of material fact that preclude summary judgment on her retaliation claims, especially concerning pretext. (Opp'n Br. at 19–29.)

The Court finds that it cannot grant summary judgment for Defendant on Plaintiff's race retaliation claims. First, the undisputed evidence could readily lead a reasonable jury to conclude that Plaintiff engaged in protected activity by filing the discrimination claim and that she suffered an adverse employment action upon Defendant's failure to renew her employment agreement. (SUMF ¶¶ 18, 36; RSMF ¶¶ 18, 36.) The Court further finds that Plaintiff provides disputed facts that are material to and suggest Plaintiff could show both causation and pretext. For the same reasons articulated above, the disputed material facts regarding Hogan's intimidating and race-based behavior, Plaintiff's own behavior and job performance, including how it was perceived by Defendant and Hogan over time, and Askins's findings suggest and certainly could lead a reasonable jury to conclude that Plaintiff's termination was because of retaliatory animus, rather than the legitimate nondiscriminatory reason provided by Defendant.[10] (*See* RSMF ¶¶ 6, 10, 16–17, 21–22.)

---

[10] Moreover, Defendant's arguments against a showing of causation are unavailing; as Plaintiff points out, the Third Circuit considers a "broad array of evidence" to determine causation, of which temporal proximity between the adverse event and protected activity is just one example. *LeBoon v. Lancaster Jewish Comm. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (internal quotation marks omitted). Here, Plaintiff's disputed facts raise considerations beyond temporal proximity that a reasonable jury could find establish causation, including the stark contrast between Plaintiff's positive job performance track record and Defendant's apparent subsequent displeasure of said performance.

The Court will therefore Deny Defendant's Motion with respect to Counts III and IV.[11]

### D.       Punitive Damages

Lastly, Defendant asks for summary judgment with respect to Plaintiff's request for punitive damages. Under the NJLAD, a plaintiff must show two elements to be awarded punitive damages: (1) "actual participation in or willful indifference to the wrongful conduct on the part of upper management" and (2) "especially egregious" conduct. *Cavuoti v. N.J. Transit Corp.*, 735 A.2d 548, 551 (N.J. 1999). Similarly, under § 1981, punitive damages require "malice or reckless indifference" to the plaintiff's federally protected rights. *Lafate v. Chase Manhattan Bank (USA)*, 123 F. Supp. 2d 773, 783 (D. Del. 2000).

Defendant argues that there is no evidence of any especially egregious or malicious conduct that would warrant an award of punitive damages in this case. (Moving Br. at 12–14.) Plaintiff argues, to the contrary, that she has presented sufficient evidence to permit a jury to consider punitive damages. (Opp'n Br. at 29–31.) Plaintiff emphasizes that Hogan himself, as President of the Board, participated in the conduct that forms the basis of her claims. (*Id.* at 30.) Here, the Court finds that there are disputed issues of material fact sufficient to preclude a finding of summary judgment regarding punitive damages. The evidence submitted by Plaintiff could lead a reasonable jury to find that punitive damages are warranted because Defendant acted with the requisite malice and intent, notably Defendant's receipt of negative findings from the Askins Report about Hogan's conduct, then later targeted Plaintiff and terminated her in response. (RSMF ¶¶ 6, 10, 16–17, 21–22.) Therefore, summary judgment as to this issue will be also denied.

---

[11] The Court notes that even if it were to not consider the additional, disputed facts improperly asserted by Plaintiff in paragraphs 15, 21, and 24 of the RSMF, (*see supra* at 8 n.7), its conclusion would be the same. The disputed facts that were properly asserted by Plaintiff are enough to raise genuine issues of material fact that preclude summary judgment with respect to Plaintiff's retaliation claims.

## V.     <u>CONCLUSION</u>

For the reasons outlined above, Defendant's Motion for Summary Judgment will be DENIED.  An appropriate Order will follow.

Date: August 30, 2024

<u>s/ Zahid N. Quraishi</u>
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
